UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| VALLEY CHILDREN'S HOSPITAL, ET AL., <br><br> Plaintiffs, <br><br> v. <br><br> ATHENAHEALTH, INC., <br><br> Defendant. | C.A. NO. 1:22-cv-10689-DJC <br><br> *LEAVE TO FILE GRANTED ON SEPTEMBER 27, 2022* |

# FIRST AMENDED COMPLAINT AND JURY DEMAND

Plaintiffs Valley Children's Hospital and Valley Children's Medical Group allege as follows:

## PARTIES AND JURISDICTION

1. Plaintiff Valley Children's Hospital ("Hospital") is a nonprofit public benefit corporation organized and existing under the laws of the State of California, and operating a free-standing children's hospital. Plaintiff Hospital's principal place of business is located in Madera County, California.

2. Plaintiff Valley Children's Medical Group ("Medical Group") is a nonprofit public benefit corporation organized and existing under the laws of the State of California, and, through its affiliated contracted medical groups, provides professional medical services to the Hospital. Plaintiff Medical Group's principal place of business is located in Madera County, California.

3. Hospital and Medical Group (together "Valley Children's") have a common owner, Valley Children's Healthcare.

1

4. Defendant Athenahealth, Inc. ("Athenahealth") is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business located in Watertown, Massachusetts.

5. The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 in that the amount in controversy exceeds $75,000 exclusive of interest and costs, and each of the Plaintiffs and the Defendant are citizens of different states.

## FACTS COMMON TO ALL COUNTS

### The Master Services Agreement

6. Effective November 14, 2012, Hospital and Athenahealth entered into a Master Services Agreement and, concurrently therewith, an Amendment to Master Services Agreement effective the same date. Copies of the Master Services Agreement and the Amendment to Master Services Agreement are attached hereto as Exhibits "A" and "B", respectively.

7. Medical Group is an "Authorized User" under the Master Services Agreement, and is entitled to enforce such agreement against Athenahealth. To the extent that standing of Medical Group is questioned, this action shall be considered a pass-through claim brought by plaintiff Hospital on behalf of an Authorized User, namely, Medical Group.

8. Section 1 of the Master Services Agreement, as amended, defines the "Agreement" between Hospital and Athenahealth as including, in addition to the Master Services Agreement and the Amendment to Master Services Agreement, the following documents: (a) Third Party Terms; (b) Proposal; and (c) the athenaCollector Service Description. Attached as Exhibits "C", "D" and "E", respectively, are true and correct copies of (a) the Third Party Terms (downloaded July 22, 2019); (b) Proposal No. O-2266984-8; and (c) the athenaCollector Service

Description. Exhibits "A" through "E" are collectively referred to herein as the "Master Services Agreement".

9. Section 1 of the Master Services Agreement defines the term "Service Description" as "each document periodically updated by Athena and incorporated herein that contains a description of any of the athenaNet Services." The term "athenaNet Services", in turn, is defined as "the services provided by Athena under this Agreement, including, but not limited to, access to and use of athenaNet by Client and the provision of athenaNet Content and Materials."

10. By Section 2(a) of the Master Services Agreement, Athenahealth agreed to provide the services "as described in each applicable Service Description", which here is the athenaCollector Service Description. The most recent such Service Description provided by defendant athenahealth is identified above as Exhibit "E", and it was issued in March of 2014 and is understood to be the operative Service Description. Changes made from prior versions of the athenaCollector Service Description are tracked in Appendix 3 of that document, and the language regarding the representations alleged in Paragraphs 13 and 14 herein were present in the Q4 2012 version in effect as of entering into the Master Services Agreement.

11. athenaCollector is Athenahealth's revenue cycle management (i.e., claims submission and billing) service which incorporates Web-based software with hands-on support staff who work the claims, purportedly combining the best of a software system used by a provider with elements of a third-party billing service, and was intended to (a) generate and timely submitting claims to payors; (b) post Remittance Advice Details received from payors; and (c) follow up on unpaid, underpaid and denied claims and working to get them paid.

**Athenahealth's Representations**

12. By the athenaCollector Service Description, Athenahealth represented that an advantage of athenaCollector was that its use by Hospital (and its Authorized Users, including Medical Group) would result in (a) faster payment, increased revenues and dramatically improved control over practice operations; (b) significantly improved financial and operational performance; (c) getting paid more and faster; and (d) a decrease in the rate of lost and denied claims. As of entering into the Master Services Agreement in November of 2012, plaintiffs Valley Children's reasonably believed the representations of defendant Athenahealth to be true, and they relied on such representations in deciding to enter into the Master Services Agreement.

13. In addition, by Section 8(b) of the Master Services Agreement, *Athenahealth warranted to Valley Children's "that the athenaNet Services will substantially conform to the Minimum Service Commitments designated and described in the applicable Service Description. …"* The Minimum Service Commitments that Athenahealth warranted it would meet are set out in the athenaCollector Service Description, and consist of the following:

    (a) <u>Uptime Minimum Service Commitment (§ 1.2)</u>. "You can't see patients if athenaNet isn't there, and we wouldn't be in business if you couldn't see patients. We are so confident in our ability to keep athenaNet up and running that we will credit you 1% of your Service Fee for every 0.1% of availability we fall below 99.7% in a month, up to a maximum of 20% of that month's Service Fee when taken in combination with any other credits. …"

    (b) <u>Claim Forwarding Minimum Service Commitment (§ 3.3)</u>. "athenahealth will submit at least 95% of your primary and secondary claims such that they move from DROP status to the next appropriate status within three business days, or we will credit you 2% of that month's invoice for every 1% we fall below 95%. …"

    (c) <u>Payment Posting Minimum Service Commitment (§ 3.5)</u>. "athenahealth commits to posting at least 95% of payment dollars within four business days after the date of receipt to your athenahealth P.O. box. If we fail to meet that minimum standard, we will credit you 2% of that month's invoice for every 1% we fall below 95%."

      (d)    <u>Claim Tracking Minimum Service Commitment (§ 3.6)</u>. "athenahealth commits to complete a claim tracking action within 20 business days on at least 95% of the claims that have remained outstanding past our standard waiting period, that is, after an Alarm has been triggered. If we fail to meet that standard, we will credit you 2% of that month's invoice for every 1% we fall below 95%."

      (e)    <u>Denial Management Minimum Service Commitment (§ 3.6)</u>. "athenahealth commits to examine and take action on at least 95% of your denials within 10 business days. If we fail to meet that standard, we will credit you 2% of that month's invoice for every 1% we fall below 95%."

14. As of entering into the Master Services Agreement in November of 2012, Valley Children's reasonably believed that what Athenahealth warranted to be true would in fact be true, and Valley Children's relied on such representations and warranties in deciding to enter into the Master Services Agreement.

### The "Mechanics" of How athenaCollector Worked

15. Upon claims information having been entered by Medical Group into athenaCollector, it is understood that the claim was automatically "scrubbed" by the athenaCollector system and, if "clean", it was ready to be submitted to a payor. This "scrubbing" is analogous to filling in a form online and having boxes highlighted in red if they have not been [accurately] filled in.

16. Original claims to each of Medi-Cal, California Children's Services, and Medi-Cal Managed Care must be submitted within six months following the month in which services were rendered. If received during the seventh to ninth months they are reimbursed at 75%; if received during the tenth to twelfth months they are reimbursed at 50%; and after the twelfth month they are denied in their entirety as being untimely.

17. Each claim that is submitted to a payor via athenaCollector (and otherwise) is subjected to a series of "edits" and "audits" by the payor, which validates the claim information

5

to determine if the claim should be paid or denied. Ultimately a claim will be paid (with payment accompanied by a Remittance Advice Detail) or it will be denied. If a claim is considered to have been incorrectly underpaid or denied, an adjustment or reconsideration, respectively, may be requested of a payor, and there is a limited time in which plaintiff Medical Group (through defendant Athenahealth) may seek such adjustment or reconsideration.

18.     As a claim moves through the process beginning with the provider's entry of information following a patient encounter and ending with the receipt of a remittance (and potentially beyond in the case of an underpayment or denial), athenaCollector assigns "Status Indicators" to the claim, and they are also commonly referred to as "Buckets". The more common and relevant Status Indicators/Buckets are the following:

    a.      DROP. Claims assigned this Status Indicator (i.e., claims in this Bucket) have passed the automated "scrub" and are ready for submission to a payor.

    b.      BILLED. Claims assigned this Status Indicator have been submitted to a payor and remittance is being waited on. The claim continues with this Status Indicator/ Bucket until a remittance or denial is received. If fully paid, the Status Indicator changes to CLOSED. If a claim is underpaid or is denied it is assigned a CBOHOLD Status Indicator (discussed in the following paragraph). If a claim has been in the BILLED Bucket longer than is typical for the particular payor to which it has been submitted, an automated internal alarm is supposed to be triggered with the Status Indicator changing to FOLLOWUP so that defendant Athenahealth is alerted that it needs to follow-up with the payor.

    c.      CBOHOLD. This Status Indicator is assigned when a claim has either failed a payor's adjudication process, or if a request for an adjustment or reconsideration is to be submitted. Other potential "holds" include ATHENAHOLD (the claim requires action by defendant Athenahealth as an error or rejection requires internal review to fix the issue); HOLD (the claim contains errors that are specific to the individual claim and information is needed from the patient, chart or physician); and MGRHOLD (the claim contains an error that typically needs to be resolved by a billing manager or someone who has access to key billing data, such as credentialing information, provider number, etc.).

19. Effective June 1, 2020, Valley Children's and Athenahealth entered into a Tolling Agreement, a true and correct copy of which is attached hereto as Exhibit "F". Pursuant to the Tolling Agreement, any statute of limitations periods applicable to the claims asserted herein, as well as any lookback periods of time that limit damages such as in Section 8(f) of the Master Services Agreement as amended, were tolled from June 1, 2020 to August 31, 2020 (the "Tolling Period"). The Tolling Period has been extended by the parties through September 30, 2021, with the exception that the tolling was not in effect from June 1 to August 5, 2021.

## COUNT I
### (Breach of Contract)

20. Plaintiffs incorporate by reference the foregoing paragraphs as if fully set forth herein.

21. Plaintiffs have performed all conditions, covenants and promises required on their part to be performed in accordance with the terms and conditions of the Master Services Agreement, except for those which were either waived by Athenahealth or which Plaintiffs were prevented from performing through no fault of their own.

22. Defendant has breached the Master Services Agreement by failing to adequately and timely process, submit and follow-up on claims, including but not limited to in the following ways:

    a. It failed to adequately train and/or provide personnel to work on the claims of plaintiff Medical Group who understood the intricacies of billing to Medi-Cal, California Children's Services, and Medi-Cal Managed Care, such that claims of plaintiff Medical Group would be timely and properly submitted and followed up on.

    b. It failed to timely submit claims to payors, and so doing failed to meet its Claim Forwarding Minimum Service Commitment. As one example, claims were assigned a

CBOHOLD or similar "hold" Status Indicator, rather than a DROP Status Indicator, after having been successfully "scrubbed", and this was true both for original claims as well as claims that had been corrected following a denial or underpayment. These claims should have immediately been submitted to a payor, but instead languished in a "hold bucket" beyond the control of plaintiff Medical Group.

    c. It failed to competently follow-up on claims with a Status Indicator of BILLED and for which neither a remittance or a denial had been received, and so failed to meet its Claims Tracking Minimum Service Commitment. Claims remained in this Bucket long after they should have been moved into the FOLLOWUP Bucket as a result of neither a remittance or denial having been received.

    d. It failed to competently follow-up on denied and underpaid claims, and so failed to meet its Denial Management Minimum Service Commitment

  23. As a direct and proximate result of these breaches by Defendant, Medical Group's claims were paid at a reduced rate, Medical Group's claims were denied for being untimely, and Medical Group's claims were simply not billed to a payor because they had become stale.

  24. Plaintiffs have suffered damages as a result of these breaches by Defendant.

## COUNT II
### (Breach of Implied Covenant of Good Faith and Fair Dealing)

  25. Plaintiffs incorporate by reference the foregoing paragraphs as if fully set forth herein.

  26. There is an implied covenant of good faith and fair dealing in the Master Services Agreement, including that neither party would do anything which would injure the right of the other to receive the benefits of the Master Services Agreement.

27. This is implied as a supplement to the express contractual covenants. It prevents a contracting party from engaging in conduct which, while not technically transgressing the express covenants, frustrates the other party's rights to the benefits of the contract.

28. Plaintiffs have performed all conditions, covenants and promises required on their part to be performed in accordance with the terms and conditions of the Master Services Agreement including the implied covenant of good faith and fair dealing, except for those which were either waived by defendant Athenahealth or which Plaintiffs were prevented from performing through no fault of their own.

29. To the extent that Defendant's actions and inactions, as alleged above, do not constitute a breach of an express covenant of the Master Services Agreement, such actions and inactions constitute a breach of the implied covenant of good faith and fair dealing.

30. As a direct and proximate result of these breaches by Defendant, Medical Group's claims were paid at a reduced rate, Medical Group's claims were denied for being untimely, and Medical Group's claims were simply not billed to a payor because they had become stale.

31. Plaintiffs have suffered damages as a result of these breaches by Defendant.

## COUNT III
### (Unfair and Deceptive Trade Practices in Violation of Mass. Gen. Laws Chapter 93A)

32. Plaintiffs incorporate by reference the foregoing paragraphs as if fully set forth herein.

33. Athenahealth is engaged in trade or commerce for the purposes of G.L. c. 93A, §§ 2, 11.

34. Athenahealth's actions and omissions alleged in this Complaint constitute unfair and deceptive trade practices in violation of G.L. c. 93A §§ 2, 11, which occurred primarily and

substantially within the Commonwealth of Massachusetts. Athenahealth's actions and omissions detailed in this complaint, which give rise to Plaintiffs' claims, originated and emanated from Massachusetts. In addition, upon information and belief, Athenahealth's relevant communications with Plaintiffs originated from Massachusetts.

35. Such actions and omissions include, without limitation, Athenahealth's failure to perform essential services and functions in reckless disregard of its representations and warranties in the Master Services Agreement; Athenahealth's breach of the implied covenant of good faith and fair dealing in connection with its obligations under the Master Services Agreement; Athenahealth's failure and refusal to provide Minimum Commitment Service Reports, which thereby concealed from Plaintiffs the full scope and nature of Athenahealth's failures to perform under the Master Services Agreement; Athenahealth's provision of certain service reports that were false and misleading insofar as they portrayed Athenahealth as satisfying its Minimum Service Commitments when in fact Athenahealth was not; and that multiple representations by Athenahealth about athenaCollector, which induced Plaintiffs to enter into the Master Services Agreement, were false or misleading.

36. By way of example, contrary to Athenahealth's representations, athenaCollector (a) did <u>not</u> result in faster payment, increased revenues, or dramatically improved control over practice operations; (b) did <u>not</u> significantly improve financial and operational performance; (c) did <u>not</u> result in getting paid more and faster; and (d) did <u>not</u> result in a decrease in the rate of lost and denied claims. Athenahealth either know or should have known about the capabilities of athenaCollector at the time it made these representations to Plaintiffs, upon which they relied.

37. Athenahealth's unfair and deceptive trade practices were willful and intentional.

**Request for Relief**

WHEREFORE, Plaintiffs respectfully requests that this Court award the following relief:

A. Judgment in favor of Plaintiffs on all counts of their Complaint;

B. Award Plaintiffs compensatory damages;

C. Award Plaintiffs punitive damages of no less than twice and no more than triple its actual damages;

D. Award Plaintiffs its attorneys' fee and costs incurred in this action; and

E. Award Plaintiffs such other and further relief as this Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiffs hereby request a trial by jury as provided by Amendment VII of the United States Constitution and by Rule 8 of the Federal Rules of Civil Procedure.

VALLEY CHILDREN'S HOSPITAL AND
VALLEY CHILDREN'S MEDICAL GROUP,
By their attorneys,

*/s/ Matthew P. Horvitz*
Matthew P. Horvitz (BBO # 664136)
GOULSTON & STORRS PC
400 Atlantic Ave.
Boston, MA 02110
Telephone: (617) 482-1776
Facsimile: (617) 574-4112
*mhorvitz@goulstonstorrs.com*

and

Charles L. Doerksen *(admitted pro hac vice)*
Doerksen Taylor Trial Lawyers
2125 Kern Street, Suite 307
Fresno, CA 93721
(559) 233-3434
*cld@doerksentaylor.com*

**CERTIFICATE OF SERVICE**

  I hereby certify that, on September 28, 2022, I electronically filed the foregoing with the Clerk's Office using the Court's CM/ECF system, which will send notification of this filing (NEF) to all registered participants, and paper copies will be sent to those indicated as non-registered participants.

              */s/ Matthew P. Horvitz*