**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| ———————————————————— )<br>  )<br>**VALLEY CHILDREN'S HOSPITAL and**   )<br>**VALLEY CHILDREN'S MEDICAL GROUP,**   )<br>  )<br>   **Plaintiffs,**   )<br>  )<br>   **v.**   )<br>  )<br>**ATHENAHEALTH, INC.,**   )<br>  )<br>   **Defendant.**   )<br>  )<br>———————————————————— ) | **Case No. 22-cv-10689-DJC** |

**MEMORANDUM AND ORDER**

**CASPER, J.**                                                            **September 18, 2023**

## I.     Introduction

Plaintiffs Valley Children's Hospital ("Hospital") and Valley Children's Medical Group

("Medical Group"), (collectively, "Plaintiffs" or "Valley") have sued Defendant athenahealth, Inc.

("Athena") alleging breach of contract (Count I), breach of the implied covenant of good faith and

fair dealing (Count II), and unfair and deceptive trade practices in violation of Mass. Gen. L. c.

93A (Count III).  D. 34.  Athena has moved to dismiss Count III, the Chapter 93A claim.  D. 36.

For the reasons stated below, the Court ALLOWS Athena's motion to dismiss, D. 36.

## II.     Standard of Review

On a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the Court must determine if

the facts alleged "plausibly narrate a claim for relief."  Germanowski v. Harris, 854 F.3d 68, 71

(1st Cir. 2017).  Reading the complaint "as a whole," the Court must conduct a two-step, context-

specific inquiry.  García-Catalán v. United States, 734 F.3d 100, 103 (1st Cir. 2013).  First, the

Court must perform a close reading of the claim to distinguish the factual allegations from the

1

conclusory legal allegations contained therein.  Id.  Factual allegations must be accepted as true, while conclusory legal conclusions are not entitled credit.  Id.  Second, the Court must determine whether the factual allegations present a "reasonable inference that the defendant is liable for the misconduct alleged."  Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).  In sum, the complaint must provide sufficient factual allegations for the Court to find the claim "plausible on its face."  García-Catalán, 734 F.3d at 103 (quoting Iqbal, 556 U.S. at 678).

III.    **Factual Background**

The following facts are drawn from Valley's first amended complaint, D. 34, and incorporated exhibits, D. 35, and are accepted as true for the purpose of resolving Athena's motion to dismiss.

Plaintiffs comprise two commonly owned non-profits:  the Hospital which is a free-standing children's hospital in Madera County, California, and the Medical Group, which provides services to the Hospital through its affiliated contracted medical groups.  D. 34 ¶¶ 1–3.  On November 14, 2012, the Hospital entered into a Master Services Agreement ("MSA") with Athena, a corporation located in Watertown, Massachusetts.  Id.  ¶ 6.  The MSA provided that Athena would furnish services as described in the included athenaCollector Service Description.  Id.  ¶ 10.

AthenaCollector is a billing and claims submission service "which incorporates Web-based software with hands-on support staff who work the claims."  Id.  ¶ 11.  The software was intended to allow the Medical Group, which is an "Authorized User" under the MSA, id.  ¶ 7, see D. 35-1 at 2, to enter claims information for submission to payors and to receive payments on those claims. D. 34 ¶¶ 11, 16.  AthenaCollector would also "follow up on unpaid, underpaid and denied claims" by assigning such claims various "Status Indicators" and taking appropriate action based on that status.  Id.  ¶ 11, 17–18.  For instance, the Status Indicator "DROP" indicates that a claim is "ready

for submission" whereas "BILLED" indicates that the claim has been submitted to the payor.  Id. ¶ 18.  Depending on the payor's response, or lack thereof, athenaCollector replaces BILLED with another Status Indicator to alert Athena that action needed to be taken.  Id.

Among the payors to whom the Medical Group submits claims are Medi-Cal, California Children's Services, and Medi-Cal Managed Care ("California Payors").  Id. ¶ 16.  The California Payors will only reimburse in full claims submitted within six months of the month in which services are rendered.  Id.   After six months, the percent reimbursed decreases on a prorated basis until 12 months, at which point the claims will be denied in full as untimely.  Id.  The Medical Group also has a "limited time" in which it may seek "adjustment or reconsideration" of a denied or underpaid claim.  Id. ¶ 17.

Valley alleges that it relied upon several representations made by Athena, prior to entering the MSA in 2012.  Id. ¶¶ 12, 14.  Valley alleges that in the athenaCollector Service Description, Athena represented that use of athenaCollector "would result in (a) faster payment, increased revenues and dramatically improved control over practice operations; (b) significantly improved financial and operational performance; (c) getting paid more and faster; and (d) a decrease in the rate of lost and denied claims."  Id. ¶ 12.  These representations precede the following statement on page seven of the athenaCollector Service Description: "The remainder of this document, except for the "About Us" section at the end, Is referred to as the "Service Description in the athenahealth Master Services Agreement and is legally binding for clients who sign that Agreement."  D. 35-5 at 8.

Under Section 8(b) of the MSA, Athena further warranted that its services would "substantially conform to the Minimum Service Commitments" listed in the athenaCollector Service Description.  D. 34 ¶ 13.  In particular, Athena committed to (1) keep its services "up and

running" with 99.7% availability each month; (2) "submit at least 95% of [Valley's] primary and secondary claims," (3) "post[] at least 95% of payment dollars within four business days after the date of receipt to [Valley's] athenahealth P.O. box," (4) "complete a claim tracking action within 20 business days on at least 95% of the claims" that are not paid within a "standard waiting period" and (5) "take action on at least 95% of Valley's denials within 10 business days." Id.

Valley alleges that Athena has breached the MSA and failed to meet its Minimum Service Commitments by failing to staff personnel who understood "the intricacies of billing to [the California Payors]" and ensuring that Valley's claims would be timely submitted and followed up on. Id. ¶ 22. As to Valley's Chapter 93A claim, Valley alleges that Athena "failed to perform essential services and functions in reckless disregard of its representations and warranties," that Athena concealed its failure to meet its Minimum Service Commitments by refusing to provide Minimum Commitment Service Reports ("Service Reports"), that Athena provided false and misleading Service Reports and that Athena induced Valley to enter the MSA with misrepresentations that it should have known were false. Id. ¶¶ 35–36.

## IV.    Procedural History

Valley filed this action on September 27, 2021, D. 1, and subsequently amended its complaint, D. 34. Athena has now moved to dismiss to the Chapter 93A claim. D. 36. The Court heard the parties on the pending motion and took the matter under advisement. D. 53.

## V.    Discussion

### A.    Whether Valley Has Plausibly Alleged that Athena Engaged in Unfair and Deceptive Trade Practices

Chapter 93A makes unlawful "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Mass. Eye & Ear Infirmary v. QLT Phototherapeutics, Inc., 412 F.3d 215, 243 (1st Cir. 2005) (quoting Mass. Gen. L. c. 93A, § 2). To

determine if an act or practice is unfair under Chapter 93A, [courts] look to '(1) whether the practice . . . is within at least the penumbra of some common-law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; [and] (3) whether it causes substantial injury to consumers (or competitors or other businessmen)." Id. (internal citation and quotation marks omitted); see Tomasella v. Nestle USA, Inc., 962 F.3d 60, 70 (1st Cir. 2020). An act or practice is deceptive "if it possesses a tendency to deceive and if it could reasonably be found to have caused a person to act differently from the way he [or she] otherwise would have acted." Tomasella, 962 F.3d at 70 (internal citation and quotation marks omitted).

In opposing the motion to dismiss, Valley argues that Athena's conduct violated Chapter 93A by (1) failing to perform its contractual obligations, (2) misrepresenting its services such that Valley was induced to enter the MSA and (3) failing to provide Valley with accurate minimum service reports.

### 1. Athena's Alleged Breach of Express or Implied Contractual Obligations to Timely Submit and Follow-Up on Medical Claims

"[M]ere breach of a contract, without more, does not amount to a [Chapter] 93A violation." Madan v. Royal Indem. Co., 26 Mass. App. Ct. 756, 762 (1989). However, "[c]onduct 'in disregard of known contractual arrangements' and intended to secure benefits for the breaching party constitutes an unfair act or practice for [chapter] 93A purposes." Anthony's Pier Four, Inc. v. HBC Assocs., 411 Mass. 451, 474 (1991) (concluding that use of a pretextual objection to development plans to coerce counterparty to pay more than originally bargained for under contract was willful violation of chapter 93A). Typically, this occurs where an "intentional breach is meant to gain, without paying for it, the ongoing benefit of a party's earlier performance" or "to force a concession from the other party to which the first party is not entitled." Feijo v. Toyota, 2000

Mass. App. Div. 332, 2000 WL 1880266, at *2 (Dist. Ct. 2000) (collecting cases); see, e.g., Arthur D. Little, Inc. v. Dooyang Corp., 147 F.3d 47, 55–56 (1st Cir. 1998) (concluding that failure to pay for completed and ongoing work constituted Chapter 93A violation where company's "purpose was to extract a favorable settlement" by "stringing out the process"); Mass. Emps. Ins. Exch. v. Propac-Mass, Inc., 420 Mass. 39, 43 (1995) (explaining that Chapter 93A is violated where "conduct undertaken as leverage to destroy the rights of another party to the agreement while the agreement is still in effect").

Here, a bare assertion that Athena failed to timely submit Medical Group's claims, as required by the MSA, would not be actionable under Chapter 93A.  Many allegations in the amended complaint indicate simply that Athena failed to meet its contractual obligations.  See D. 34 ¶ 22 (alleging, *inter alia*, that Athena "failed to adequately train and/or provide personnel," "failed to timely submit claims to payors," and "failed to competently follow-up on claims"); see Rodriguez, 2016 WL 1426303, at *15 (finding that no chapter 93A liability arose where rail service was "working hard, but allegedly ineffectively, to restore service").  Nor is there any allegation that Athena used its poor performance to extract some additional un-bargained for benefit from Valley.  Feijo, 2000 WL 1880266, at *2 (holding that the refusal to sell car to plaintiff was not a Chapter 93A violation because there was "no attempt to extort anything additional from [plaintiff]").

Valley argues that even so, Athena's breach of the implied covenant of good faith and fair dealing should constitute an unfair and deceptive trade practice.  D. 48 at 6 n.2.  In some cases, an adequately pled breach of the implied covenant of good faith and fair dealing goes hand in hand with a Chapter 93A claim.  Speakman v. Allmerica Fin. Life Ins., 367 F. Supp. 2d 122, 140 (D. Mass. 2005) (explaining that "inherent in such claims is an element of either bad faith and improper

motive or a breach of fair dealing . . . that clearly falls within established common law . . . concept[s] of unfairness" (alteration in original) (internal quotation marks and citation omitted)).  Not all breaches of the implied covenant, however, rise to the level of a Chapter 93A claim.  Frostar Corp. v. Malloy, 63 Mass. App. Ct. 96, 109 & n.26 (2005) (affirming trial judge's conclusion that no violation of Chapter 93A occurred despite jury verdict for plaintiff on breach of implied covenant of good faith and fair dealing).  "[V]iolations of [Chapter] 93A must meet a higher standard of liability than do breaches of an implied covenant of good faith and fair dealing." Formulatrix, Inc. v. Rigaku Automation, Inc., 344 F. Supp. 3d 410, 430 (D. Mass. 2018) (quoting PH Group Ltd. v. Birch, 985 F.2d 649, 652 (1st Cir. 1993)).

Here, Valley's claim for a breach of the implied covenant of good faith and fair dealing is pled as a catch-all to its breach of contract claims.  D. 34 ¶ 29 (alleging that "to the extent that Defendant's actions and inactions, as alleged above, do not constitute a breach of an express covenant of the Master Services Agreement, such actions and inactions constitute a breach of the implied covenant of good faith and fair dealing").  Even if Valley has pled that Athena breached the MSA in bad faith, its claim for breach of the implied covenant adds no factual allegations suggesting that Athena's breach of the MSA rose to the "level of rascality" or had the "requisite extortionate quality" necessary to constitute a violation of Chapter 93A.  Cognitive Edge Pte Ltd. v. Code Genesys, LLC, No. 1:19-CV-12123-IT, 2021 WL 2829555, at *13 (D. Mass. Jan. 19, 2021) (ruling that no Chapter 93A violation occurred despite proof of defendants' lack of good faith in breaching contract); Pazol v. Tough Mudder Inc., 384 F. Supp. 3d 191, 197 (D. Mass. 2019) (ruling that "[p]laintiffs have alleged no facts from which the Court can infer that [defendant's] breach had the requisite extortionate quality to give rise to a Chapter 93A claim"); see Dufficy Enterprises, Inc. v. Berarducci, No. 1784CV03292BLS, 2020 WL 12309011, at *37

(Mass. Super. June 7, 2020) (concluding that withholding approval for construction in breach of implied covenant and fair dealing did "not rise to the level of" a Chapter 93A violation).  Even drawing all plausible inferences from the allegations in the first amended complaint in Valley's favor, the Court concludes that Valley has not adequately pled an unfair or deceptive trade practice based on either a breach of the implied covenant of good faith and fair dealing or on Athena's failure to timely submit and follow-up on Valley's bills, in contravention of express or implied obligations in the MSA.

Accordingly, the motion to dismiss the chapter 93A claim is denied with respect to Athena's failure to properly assign Status Indicators to Valley's claims and thus ensure that Valley's claims were timely submitted and followed up.

### 2.    Athena's Misrepresentations to Induce Valley to Enter the MSA

Valley also alleges that misrepresentations in the athenaCollector Service Description induced it to enter the MSA.  D. 34 ¶ 35.  "It is well settled that a misrepresentation that induces a party to enter into a contract is actionable under [Chapter] 93A if that party suffers compensable damages." Billingham v. Dornemann, 67 Mass. App. Ct. 1105, 2006 WL 2490204, at *1 (2006); Fraser Eng'g Co. v. Desmond, 26 Mass. App. Ct. 99, 104 (1988) (quoting Lowell Gas Co. v. Attorney Gen., 377 Mass. 37, 51 (1979)) (holding that real estate developer's assurance that subcontractor would be paid from insurance proceeds was deceptive act under Chapter 93A for which subcontractor could recover attorney's fees expended in satisfying debt).  The plaintiff need not prove intent to deceive for the allegedly deceptive act or practice so long as there is "a causal relationship between the misrepresentation and the injury to the plaintiff." Id.; see Iannacchino v. Ford Motor Co., 451 Mass. 623, 631 n.12 (2008) (explaining that plaintiff must show "causal connection between the deception and the loss and that the loss was foreseeable as a result of the deception").

8

Athena does not appear to challenge the causal connection between the representations and Valley's losses at this juncture, but instead argues that Valley has not pled this claim with sufficient particularity under Federal Rule of Civil Procedure 9(b) ("Rule 9(b)"), that the alleged misrepresentations are not actionable and that Valley's reliance on the misrepresentations is unreasonable given contractual language disclaiming extracontractual representations by Athena. D. 37 at 13–17; D. 52 at 5–6.  In its reply memorandum, Athena further argues that this claim is time-barred.  D. 52 at 6.  The Court considers these arguments in turn.

a)     Heightened Pleading Standard Under Rule 9(b)

"Claims that rely on allegations of intentional and malicious false statements, even when they are not pleaded as fraud, have been held to be effective allegations of fraudulent misrepresentations that cannot serve as the lynchpin of a cause of action without triggering Rule 9(b)."  Timmins Software Corp. v. EMC Corp., 502 F. Supp. 3d 595, 605 (D. Mass. 2020) (citation and internal quotation marks omitted); see N. Am. Cath. Educ. Programming Found., Inc. v. Cardinale, 567 F.3d 8, 14 (1st Cir. 2009).  "Rule 9(b) requires a party pleading fraud to specify the "who, what, where, and when of the allegedly false or fraudulent representation," Robert E. Ricciardelli Carpet Serv., Inc. v. Home Depot U.S.A., Inc., 679 F. Supp. 2d 192, 207 (D. Mass. 2010) (quoting Alternative Sys. Concepts, Inc. v. Synopsys, Inc., 374 F.3d 23, 29 (1st Cir. 2004)).  Here, the Court concludes that Valley's claim sounds in fraud.  D. 34 ¶ 36 (alleging various "representations" made by Athena that did not occur and that Athena "either kn[e]w or should have known about the capabilities of athenaCollector at the time it made these representations to Plaintiffs, upon which they relied"); Santos v. SANYO Mfg. Corp., No. CIV.A. 12-11452-RGS, 2013 WL 1868268, at *6 (D. Mass. May 3, 2013) (concluding that Chapter 93A claims "based on alleged misrepresentation and concealment" must meet the heightened pleading standard).  As a

result, Valley must meet the heightened pleading standard of Rule 9(b).  Martin v. Mead Johnson Nutrition Co., No. CIV A 09-11609, 2010 WL 3928707, at *3 (D. Mass. Sept. 30, 2010).

Valley alleges that the athenaCollector Service Description "represented" that use of athenaCollector "would result in (a) faster payment, increased revenues and dramatically improved control over practice operations; (b) significantly improved financial and operational performance; (c) getting paid more and faster; and (d) a decrease in the rate of lost and denied claims."  D. 34 ¶ 12.  Both parties agree that the relevant misrepresentations were made on pages 4 and 5 of the athenaCollector Service Description.  D. 37 at 14; D. 48 at 16.  Valley's allegations correspond to statements on pages four and five of the Service Description, including:  (1) "athenaCollector is the industry's leading billing and practice management solution — delivering faster payment, increased revenues and dramatically improved control over practice operations;" (2) "The result? Significantly improved financial and operational performance for your practice;" (3) "You can: Get paid more faster . . . [and] Decrease the rate of lost and denied claims."  D. 35-5 at 5, 6.  Valley has sufficiently alleged the content of the alleged misrepresentations.  As to the time, place and source of the representations, Valley has pled that Athena made the representations in the athenaCollector Service Description which the relevant provisions of which were in effect in "Q4 2012" when MSA was executed.  D. 34 ¶¶ 6, 8–10, 12, 14.  This is sufficient to put Athena on notice as to the claim against it.  See Rodi v. S. New England Sch. of Law, 389 F.3d 5, 11, 15 (1st Cir. 2004) (concluding that letters attached to complaint, which contained alleged misrepresentations were "unarguably specific as to speaker, content, context, and time"); Hoffman v. Optima Sys., Inc., 683 F. Supp. 865, 868 (D. Mass. 1988) (holding that fraudulent inducement claim was sufficiently pled where complaint alleged time and place where agreement was executed and that defendants made representations to plaintiff to induce his assent).

Accordingly, the Court concludes that Valley has pled its Chapter 93A claim with sufficient particularity as to the representations in the athenaCollector Service Description.

b)      Whether the Misrepresentations Are Actionable

Athena argues that the alleged misrepresentations are non-actionable under Chapter 93A because they are mere puffery or statements of subjective opinion.  D. 37 at 14–15; Isaac v. Ashley Furniture Indus., Inc., No. CV 17-11827-RGS, 2017 WL 4684027, at *2 (D. Mass. Oct. 18, 2017) (concluding that use of the phrase "DuraBlend" in marketing is non-actionable under Chapter 93A); Burke v. Conversent Commc'ns of Mass., Inc., 74 Mass. App. Ct. 1115, 2009 WL 1544063, at *1 (2009) (affirming summary judgment for defendant as to Chapter 93A and misrepresentation claims based on "general statements that [defendant] could provide better Internet services than [competitor]" and would meet plaintiff's needs.  The distinction between actionable statements of fact and non-actionable puffery or opinion often is a fact-specific determination.  NPS, LLC v. Ambac Assur. Corp., 706 F. Supp. 2d 162, 172 (D. Mass. 2010); see Kwaak v. Pfizer, Inc., 71 Mass. App. Ct. 293, 301 (2008) (denying class certification for chapter 93A advertising claims where "court will be forced to draw fine lines between actionable deception and permissible puffery").

Of the alleged misrepresentations identified above, however, the Court concludes that promises of "[s]ignificantly improved financial and operational performance" and "dramatically improved control over practice operations" are non-actionable puffery.  D. 35-5 at 6, 7; In re Intel Corp. Sec. Litig., No. 18-CV-00507-YGR, 2019 WL 1427660, at *12 (N.D. Cal. Mar. 29, 2019) (dismissing securities fraud claim where statements regarding "performance improvement" or "optimize[d] interconnectivity" were "too vague and immaterial" as a matter of law); Collins Inkjet Corp. v. Eastman Kodak Co., No. 1:13CV664, 2014 WL 11516553, at *13 (S.D. Ohio Mar. 21, 2014) (concluding that press release stating that customers received the "highest levels" of

"optimized system performance" or "optimal printing performance" was mere puffery), aff'd, 781 F.3d 264 (6th Cir. 2015). These statements do not relate any specific, measurable property of athenaCollector and are not tied to any factual falsehoods. NPS, LLC, 706 F. Supp. 2d 162 at 174 (concluding that statements regarding company's "time-tested business model of stringent underwriting practices" was non-actionable where statements lacked specificity and tie to factual falsehoods). At most, they offer a hypothetical, but non-objective, view of what Valley might achieve by using athenaCollector. D. 35-5 at 6, 7; see Azurity Pharms., Inc. v. Edge Pharma, LLC, 45 F.4th 479, 504 (1st Cir. 2022) (affirming dismissal of false advertising claim where competitor's statement that "commercially available options are not ideal for use in the hospital setting" did not invite comparison with competitors on the basis of FDA approval and plaintiff offered no other objective way to measure the attribute of "idealness").

As to the statements that Valley could "[g]et paid more faster," "[d]ecrease the rate of lost and denied claims," and obtain "faster payment, increased revenues," these statements at least appear to be objectively measurable. See Clorox Co. Puerto Rico v. Proctor & Gamble Com. Co., 228 F.3d 24, 39 (1st Cir. 2000) (concluding that "whiter is not possible" was actionable in false advertising claim where it "invites consumer to compare [product's] whitening power" against competitors and was supported by studies comparing product with other detergents). Indeed, the Service Description itself touts these representations as "measurable." See D. 35-5 at 6. Nevertheless, Athena argues that these statements are non-actionable because they "express Athena's opinion about future events" rather than existing fact. D. 37 at 15 (citing Yerid v. Mason, 341 Mass. 527, 530 (1960)); see Adar Invs., LLC v. Bayview Loan Servicing, LLC, 87 Mass. App. Ct. 1132 (2015) (concluding that rental income projections amounted to "seller's talk" based on assumptions and were not actionable)). Indeed, while Valley characterizes its Chapter 93A claim

relying upon statements as to athenaCollector's "capabilities," D. 34 ¶ 36, it appears that the alleged misrepresentations make predictions about what athenaCollector's "use by [Plaintiffs] would result in."  D. 34 ¶ 12; <u>Yerid</u>, 341 Mass. at 530 (holding that statement of "strong belief" that plaintiffs "would have no further trouble with water" was not actionable); <u>S. Middlesex Opportunity Council, Inc. v. Town of Framingham</u>, 752 F. Supp. 2d 85, 120 (D. Mass. 2010) (holding that prediction as to impact of residential drug treatment program's expansion on town was not actionable).   Athena's representations regarding the features of athenaCollector that would create these improvements in future financial and operational performance, are non-actionable puffery.  <u>See, e.g.</u>, D. 35-5 at 5 (stating that "athenaCollector is the industry's leading billing and practice management solution" and "helps you solve these challenges" by, *inter alia*, "offer[ing] the industry's leading approach to billing and practice management"); <u>Ferring Pharms. Inc. v. Braintree Lab'ys, Inc.</u>, 38 F. Supp. 3d 169, 179 (D. Mass. 2014) (dismissing false advertising claim based on statement that product "helps achieve success" because statement is puffery).

Valley responds that opinions as to future events remain actionable "where the defendant misrepresents his actual present intent to perform a future act." D. 48 at 16 (quoting <u>Rodowicz v. Mass. Mut. Life Ins. Co.</u>, 192 F.3d 162, 176 n.10 (1st Cir. 1999)).   Here, however, the representations relate to the impact Valley's use of athenaCollector will have on Valley; in other words, Athena makes no representation about its intention to perform any future act of its own.  D. 35-5 at 6 (stating "[y]ou can: Get paid more and faster"); <u>Cf.</u> <u>Crosby Legacy Co., LLC v. TechnipFMC plc</u>, No. CV 18-10814-MLW, 2021 WL 4452867, at *5 (D. Mass. Sept. 29, 2021) (denying motion to dismiss fraud claim based on defendant's statement "that [defendant] would soon sign the 2017 license agreement"); <u>Barrett Assocs., Inc. v. Aronson</u>, 346 Mass. 150, 152

(1963) (holding that plaintiff could prove misrepresentation by showing that defendant did not intend to follow through on promise not to take any salary or other funds from business until it was profitable).

Accordingly, the Court concludes that the alleged misrepresentations by Athena are non-actionable under Chapter 93A as mere puffery and statements of opinion as to future events.[1]

### 3.    Athena's Failure to Provide Accurate Service Reports

Finally, Valley asserts that "Athena fail[ed] to provide Minimum Service Reports" and provided "misleading service information, which thereby concealed from Valley Children's the extent of Athena's nonperformance under the MSA."  D. 48 at 13; see D. 34 ¶ 35.  In its reply memorandum, Athena argues that Valley has not pled this basis for its Chapter 93A claim with the particularity required by Rule 9(b).  D. 50-1 at 7.  The Court agrees with Athena that Valley's claim as to false and misleading Service Reports must be pled with Rule 9(b) particularity, because it is premised on intentional concealment of material information from Valley.  D. 34 ¶¶ 35–37; see Santos, 2013 WL 1868268, at *6.

Here, Valley alleges that Athena's "provision of certain service reports that were false and misleading insofar as they portrayed [Athena] as satisfying its Minimum Service Commitments when in fact Athenahealth was not" violated chapter 93A.  D. 34 ¶ 35.  Valley does not identify which of these "certain service reports" were false, when they were provided, or the content of the statements that were false and misleading.  See Mead Corp. v. Stevens Cabinets, Inc., 938 F. Supp. 87, 90 (D. Mass. 1996) (holding that requirements of Rule 9(b) were not met where "[t]he most one can say is that [the manufacturer] made 'frequent solicitations,' of a type, 'beginning in 1987,

---

[1] Given this ruling, the Court does not reach Athena's argument that Valley could not rely on the representations because they were not contractually binding or that any such claims are time-barred.  D. 37 at 14, 16–17; D. 50-1 at 6.

if not sooner,' which misrepresented the appropriateness of its product for [the buyer's] needs"). As a result, the complaint fails to "place [Athena] on notice and enable [it] to prepare meaningful responses." Dumont v. Reily Foods Co., 934 F.3d 35, 39 (1st Cir. 2019) (explaining purposes of Rule 9(b)). Accordingly, Valley's chapter 93A claim on the basis that Athena failed to provide accurate Service Reports must be dismissed.

In sum, the Court concludes that Valley has not adequately pled a chapter 93A claim and grants Athena's motion to dismiss.[2]

### B.    Leave to Amend Complaint

Valley requests leave to file an amended complaint with "additional factual details concerning its Chapter 93A claim." D. 48 at 6–7. It does not, however, sufficiently explained either in its papers or at oral argument how the deficiencies in the first amended complaint will be cured as to the Chapter 93A claim or why sufficient allegations were not made in its operative, amended pleading. Although the parties remain in the midst of discovery, D. 45, in the absence of being able to determine the non-futility of any such amendment, the Court denies the request to amend at to Count III. See Acosta–Mestre v. Hilton Int'l. of Puerto Rico, Inc., 156 F.3d 49, 52 (1st Cir.1998).

## VI.    Conclusion

For the foregoing reasons, the Court ALLOWS Athena's motion to dismiss the Chapter 93A claim (Count III), D. 36. The case shall proceed on the other, remaining claims, Counts I and II.

---

[2] Given these rulings, the Court need not reach Athena's argument that the Chapter 93A claim should be dismissed because the unfair and deceptive practices did not occur primarily and substantially in Massachusetts. D. 37 at 17–20.

15

**So Ordered.**

/s/ Denise J. Casper
United States District Judge